**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA    :
                   :
    v.                :        Criminal No. 07-274 (RJL)
                   :
RENITA FRANKLIN-THROWER,    :

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

      The United States, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in aid of sentencing.  For the reasons set forth herein, the government respectfully recommends that the Court, sentence the defendant to a period of four months of incarceration.

**I.**    **BACKGROUND**

      On October 16, 2007, a federal Grand Jury sitting in the United States District Court for the District of Columbia returned a one-count Indictment charging the defendant with one count of Obtaining Funds by Embezzlement from an Organization Receiving Federal Funds, in violation of 18 U.S.C. § 666(a)(1)(A).  The criminal conduct in the Indictment occurred between August 28, 2006, and January 11, 2007.  On December 21, 2007, the defendant pled guilty to the Indictment.  As part of her plea, the defendant agreed that the following facts would have been established beyond a reasonable doubt had this case gone to trial:

      At all times relevant to this case, the National American Red Cross (Red Cross) was a corporation with its principal place of business and national headquarters in the District of Columbia.  At all times relevant to this matter the Red Cross National Headquarters was located at 2025 E Street, N.W., Washington, D.C.  The Red Cross' principal purposes were to provide volunteer aid in the time of war to the sick and wounded of the Armed Forces, and to "carry out a

system of national and international relief in the time of peace and to apply that system in mitigating the suffering caused by pestilence, famine, fire, floods and other great national calamities."[1]

In order to carry out its mission, the Red Cross ran various programs and provided various services throughout the world and the United States.  Also in order to carry out its mission including making payments to its employees, staff, suppliers of goods and services, and contractors, the Red Cross maintained accounts at various banks and maintained an endowment. In addition to having received donations and grants, the Red Cross received annually hundreds of thousands of dollars from the United States Federal Government in the form of grants, programs, contracts, loans  and subsidies.  At all times relevant to this matter, from 2004 through 2007, the Red Cross received in excess of $10,000.00 from the Federal Government in the form of grants.

On or about August 4, 2005, defendant Franklin-Thrower was hired by the Red Cross to work at its National Headquarters in the District of Columbia as a Payroll Administrator at an annual salary of $50,024.  Defendant Franklin-Thrower received her salary by electronic funds deposit (direct deposit) into her PNC bank account.  As a Payroll Administrator defendant Franklin-Thrower's responsibilities included: making and processing payments to various tax authorities for payroll taxes; interfacing with a third-party payroll company called "ADP," and, when the need arose, processing "manual" checks paid out directly from the Red Cross' JP Morgan Chase Bank Payroll Account on the occasions that such checks would have to be issued to employees of Red Cross.

All Red Cross employees received their payroll pay directly from ADP in the form of a

---

[1]  36 U.S.C. § 300103(4)

paper check or via direct deposit.  As a normal operation, Red Cross did not pay its employees

with paper payroll checks that were generated within its own payroll office.  Instead, manual

payroll checks drawn on the Red Cross account at JP Morgan Chase bank were prepared and

issued from the payroll office in the occasional event that a person had not received his payroll

check from ADP, misplaced a check, or had not been paid but was due his payroll check.

 The manual payroll checks maintained by Red Cross were kept secured and were only

accessible by the small payroll staff and some supervisors.  One person with such access during

all relevant times was defendant Franklin-Thrower.  These manual payroll checks were prepared

and produced in the payroll office by having a payroll employee "key-in" the relevant

information including the name of the employee, the date of the check,  and the amount of pay

the employee was due.  Once this information was "keyed-in" the check was printed with the

authorized signature printed on the face of the check.  As a payroll employee Ms. Franklin-

Thrower could "key-in" information into the payroll computer to print a payroll check.

 Beginning on or about August 28, 2006, until on or about January 11, 2007, defendant

Franklin-Thrower devised a scheme to embezzle, steal, or obtain by fraud, the money of the Red

Cross by using her position in the payroll department to access manual payroll checks and

produce  Red Cross manual payroll checks made out to herself to which she was not entitled.

Upon completion of the manual checks made out to herself, defendant Franklin-Thrower would

either deposit the money or otherwise convert the money to her use with neither the knowledge

nor authority of the Red Cross.  From on or about August 28, 2006, until on or about January 11,

2007, defendant Franklin-Thrower executed this scheme on seven occasions and wrote seven

manual checks to herself totaling $28,617.50 to which she was not entitled.

On or about January 30, 2007, after a routine review of the financial records during the bank reconciliation process by the Red Cross Shared Services Center revealed the scheme, Red Cross employees disclosed to defendant Franklin-Thrower that they had discovered the scheme and the unauthorized payments to defendant.  At that time, defendant, Franklin-Thrower admitted that she had stolen the money from the Red Cross.

## II.    SENTENCING CALCULATION

### A.    Statutory Minimum/Maximum

The maximum term of imprisonment for the charge of, in violation of Title 18 U.S.C. Section 666(a)(1)(A), a Class C felony, is 10 years and/or a fine of $250,000, or both.  PSR at p.1 and ¶ 60.

### B.    United States Sentencing Guidelines Calculation

The Presentence Report writer has calculated defendant's total offense level to be 8 and a criminal history category of I.  Thus, the defendant's Guidelines range for violation of  18 U.S.C. Section 666(a)(1)(A) would be zero to six months.   PSR at ¶ 61.  The defendant is eligible for a term of probation of no less than one year and no more than five years.   PSR at ¶ 68.

### C.    The Impact of Booker

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004).  As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory,  Title 18, United States Code, Section 3553(b)(1).  Booker, 543 U.S. at 258.  However, the Court expressly refused to invalidate the Guidelines in their entirety.  To the contrary, the Court upheld the

-4-

remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime. Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the Court must state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that described in the Guidelines. See 18 U.S.C. Section 3554(c)(2). The sentence will then be subject to review by courts of appeals for "reasonableness." Id. at 261.

In Booker's wake, this Court must continue to resolve disputed questions of fact and law and correctly calculate a defendant's sentence under the existing Sentencing Guidelines. See Fed. R. Crim. P. 32(i)(3)(B) (court must rule on unresolved objections to the Presentence Report or determine that resolution not necessary to sentencing). "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Booker at 262 (citing 18 U.S.C. Sections 3553(a)(4)&(5) (Supp. 2004)). In light of this mandate – and the continued requirement of written explanations for sentences that fall outside of the range called for by the Guidelines and the new standard of "reasonableness" review – it is plain that a sentence within the Guidelines, while not required, is reasonable per se. Not only is a sentence within the Guideline range reasonable per se, but it also accommodates the goal, endorsed by both Congress and the Supreme Court, of meting out fair and uniform sentences.

In this case, as explained further in Section IV below, no unusual circumstances exist that warrant an exception to the preference for Guidelines sentencing in this case.

## IV.     DEFENDANT SHOULD BE SENTENCED TO FOUR MONTHS OF INCARCERATION

The Government recommends that the Court sentence the defendant to four months of incarceration, which is within the Guidelines range of zero to six months.  Such a sentence would not only be presumptively reasonable, for the reasons outlined in section II.C. above, but would also be justified by consideration of the sentencing factors enumerated in 18 U.S.C. § 3553. Those factors fall into three main categories:  the nature of the offense, the needs of the public, and the history and characteristics of the defendant.  United States v. Ranum, 353 F. Supp.2d 984, 989 (E.D. Wis. 2005).

The nature of the defendant's illegal conduct represents a real fraud upon the community.  She abused her position of trust as a payroll employee at a renowned charitable organization by writing herself seven checks totaling $28,617.50.  Put another way, over a period of approximately six months, she wrote herself checks in an amount equal to fifty-seven percent of her annual salary of $50,024.  Had she continued at the same rate for the entire year without being caught, she would have paid herself more than one additional year's worth of annual salary.  The money she stole could otherwise have been used to provide volunteer aid in this time of war to members of the Armed forces, or to provide national and international relief to those suffering as a result of national disasters.  Thus her illegal actions had a real impact on the needs of the public.

Moreover, the defendant's conduct may well discourage voluntary donations by those who will lose trust in the ability of the Red Cross to make good use of their contributions.  It is vital that the Court send a message to both the defendant and the community that this kind of

behavior will not be tolerated at one of the nation's most important charitable organizations, and that it is safe to donate money to the Red Cross.

Although the defendant is eligible for a probationary sentence, nothing about her conduct suggests that a sentence of probation would be beneficial to her or the community. A number of factors demonstrate that she is not amenable to supervision. First, the defendant appears to be unable to comply with her conditions of release. Most recently, the defendant was rearrested for committing felony larceny in Charles County, Maryland, while she was on release in this case.[2] Her warrant for that case is still pending. In addition, the defendant failed to cooperate with the probation office for the purposes of completing the presentence report, ultimately causing the need to reschedule her sentencing hearing from March 27, 2008, until June 19, 2008.

Second, the defendant has been on probation numerous times in the past, and it has not deterred her illegal conduct or her failure to comply with orders to return to court. To be specific, on July 14, 1989, after being charged with one count of "bad checks," her case was placed on a stet docket. On January 3, 1996, she received Probation before Judgment in Baltimore City District Court for failing to disclose a material fact regarding her unemployment. On January 17, 2007, after being charged with failure to return a rented vehicle, her case was once again placed on a stet docket. On January 23, 2006, she received Probation before Judgment in connection with a charge for disorderly conduct. She has also received Probation before Judgment three times in connection with speeding, and failed to appear for court on two

---

[2]    According to the Charles County States Attorney's Officer, it is alleged that on two separate occasions in February of 2008, in her role as an accounting employee for Conmed Health Management, Inc., the defendant wrote a check to herself, without permission to do so. The checks totaled $17,500.00. The Charles County States Attorney is currently reviewing the file to determine whether it should remain in District Court or be transferred to Circuit Court.

occasions, resulting in the suspension of her license.

Finally, the Government observes that a number of the offenses for which the defendant previously received some form of probation, and for which she is currently facing charges in Charles County, also involve a lack of veracity or abuse of a position of trust. In short, neither her former terms of probation nor her pending case with this Court appears to deter her from committing this specific kind of offense.

Nor should the Court impose a term of supervised release in this case. Pursuant to 18 U.S.C. § 3583(a), the court is not required to impose a term of supervised release in this case. For the reasons set forth above, the Court should not do so. The same factors that make the defendant a poor candidate for probation mitigate against expending the resources necessary to supervise the defendant after she serves her term of imprisonment. Moreover, it appears based on the defendant's financial history, that she will be unable to pay any restitution or to satisfy a fine even if she were not incarcerated.

Sentencing the defendant to four months of incarceration will serve the interests of the community and give both the government and the defendant the benefit of the bargain negotiated by the parties in this case.

V.    **CONCLUSION**

The defendant should be sentenced to four months of incarceration.

Respectfully,

JEFFREY A. TAYLOR
United States Attorney


_____/s/_____
Emily A. Miller
Assistant United States Attorney
Federal Major Crimes Section
555 4th Street, N.W.  #4237
Washington, DC 20530
Phone: 514-7533; Fax: 514-6010
D.C.  Bar No. 462077